IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

H&M BAY, INC.,                    :
                                  :
    Plaintiff,                    :
                                  :
vs.                               :   1:04-CV-41-3 (WLS)
                                  :
WILLIAM T. SHOOK, ET. AL.,        :
                                  :
    Defendants.                   :

## ORDER

Presently pending is Plaintiff's motion for summary judgment. (Tab 16). The Court had previously drafted an order on the motion but withheld its decision in the matter after receiving an unfiled letter seeking to allow Defendants' additional time to file its response to the motion. (Tab 23). Defendants had previously failed to respond timely to the motion. Since that date, the parties have formally moved for an extension of time for Defendants to respond which the Court granted. (Tab 28). Defendants have now filed a response to the motion. (Tab 27). For the following reasons, Plaintiff's motion for summary judgment (Tab 16) is **DENIED.**

## DISCUSSION

The facts of this case are quite simple and undisputed. On October 7, 2002, Plaintiff and Defendants entered into a Broker-Carrier Agreement, wherein Defendants, as independent contractors agreed to transport certain frozen seafood to Plaintiff's customers. Defendants consist of Shook individually and his limited liability company. For the sake of convenience, the Court shall refer to Defendants as "Shook" or "Defendant." The agreement called for Defendant to indemnify Plaintiff in the event the goods, the seafood, while in the possession or control of Defendant were damaged or lost. On January 17, 2003, Defendant Shook contacted Plaintiff to find out if there were any goods to be transported.

1

Plaintiff instructed Shook to take his tractor-trailer to a cold storage facility in Mobile, Alabama.

On January 17, 2003, Shook traveled to the cold storage facility in Mobile, Alabama. There he loaded his trailer with freight and traveled to Lake City, Florida. Once at the terminal in Lake City, Shook was ordered to off load the freight from Mobile and to reload his trailer with (5) five separate shipments of frozen seafood. After loading the seafood he locked his trailer with a pad lock.

On January 18, 2003, Shook obtained five (5) bills of lading. He was to deliver the seafood shipments to Georgia, New Jersey, Washington, D.C., Maryland and Perth Amboy. Shook examined the cargo and was satisfied the shipments were in good shape. On the same day, Shook began traveling towards Gainesville, Georgia. Around 6:00 p.m. or 7:00 p.m., after driving a few hours, Defendant Shook stopped at a truck stop in Cordele, Georgia..

At the truck stop, Shook unhitched the trailer and left it in a parking area of the truck stop. Plaintiff maintains that the parking lot was unsecured while Shook maintains that some type of surveillance was maintained over the lot. He then drove the truck to the fuel pumps to refuel. After refueling, he drove across the street to the Days Inn Motel, for an overnight stay. He left the motel once that evening to go to Denney's to get something to eat.

The next day, January 19, 2003, Defendant Shook discovered that the trailer and cargo had been stolen. He contacted local authorities and Plaintiff to report the theft. Several months later, the trailer was found in a city near Atlanta, Georgia, by the Atlanta police department. The trailer was partially empty and the remaining frozen food was ruined. The freight Shook retrieved from Plaintiff's warehouse on January 18, 2003, was never delivered to Plaintiff's customers.

In February 2003, Plaintiff notified Defendant that it intended to seek reimbursement under the contract for the value of the freight that was lost while in Defendant's possession.

2

Defendant filed a claim with his insurance company which denied the claim because Shook failed to properly secure the trailer in a secure parking lot. Plaintiff paid its customers $140,838.22 for the lost cargo. Defendant has failed to pay Plaintiff for the lost cargo and this suit followed as a result.

## I. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court is required to "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993) (quotations and citations omitted).

The moving party carries the initial burden of showing that there is an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The substantive law governing the case determines which facts are material, and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For issues on which the non-movant bears the burden of proof at trial, the moving party "simply may show—that is, point out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case." Fitzpatrick, 2 F.3d at 1116 (quotations and citations omitted).

If the moving party fails to overcome this initial burden, the Court must deny the motion for summary judgment without considering any evidence, if any, presented by the

non-moving party. Fitzpatrick, 2 F.3d at 1116. If, on the other hand, the moving party overcomes this initial burden, then the non-moving party must show the existence of a genuine issue of material fact that remains to be resolved at trial. Id. Moreover, the adverse party may not respond to the motion for summary judgment by summarily denying the allegations set forth by the moving party. Rather, the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

## ANALYSIS

Plaintiff maintains that the contract to transport the freight in question is governed by the Carmack Amendment which provides that "a common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter I, II, or IV of chapter 105 of this title and a freight forwarder shall issue a receipt or bill of lading for property it receives for transportation under this subtitle. That carrier or freight forwarder and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission under subchapter I, II, or IV are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported ...." 49 U.S.C. § 14706(a)(1).

To establish a *prima facie* case under the Carmack Amendment the Plaintiff must establish: (1) delivery of the goods to the carrier in good condition; (2) that the freight was damaged or lost; and (3) the amount of damages." Missouri Pacific R.R. Co. V Elmore & Stahal, 377 U.S. 134, 138 (1964).

As pointed out by Shook, however, the elements of a Carmack violation are not as simple as it might appear. When the goods are delivered to the carrier in a sealed container,

4

the boxes, as here, the shipper has to prove by direct evidence that the goods were in good condition. A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp., 334 F.3d 997 (11th Cir. 2003). Therefore, as a matter of law, it cannot be said at this point that Plaintiff has satisfied the first element of the three prong test. This element can only be proved by direct evidence to the trier of fact, *i.e.,* the jury.

Even if Plaintiff has proven the essential elements of the claim, then the burden then shifts to Defendant to show that his actions were reasonable. "Once a prima facie case is established, the burden shifts to the carrier to prove (1) that it was free from negligence, *and* (2) that the damage to the cargo was caused by one of the five excusable factors: "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods.'" A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp., 334 F.3d at 1003.

The question of negligence is a question for the finder of fact, *i.e.,* the jury. In this case, Shook argues that his actions of parking the trailer at the truck stop were reasonable. He argues essentially that it was a standard practice in the trucking industry to leave a trailer unattended at a truck stop, especially where other trailers were parked, there was surveillance, and a clerk on duty. Shook further argues that Plaintiff knew that there was an increased incidents of trailer thefts in the Georgia/Florida area, which Shook was unaware of, and should have warned him.

Based on the totality of the evidence, the Court cannot say as a matter of law that Plaintiff has established a *prima facie* case or that Defendant was negligent. Therefore, Defendant's motion for summary judgment (Tab 16) is **DENIED**.

**SO ORDERED**, this __13th__ day of July, 2005.

/s/W. Louis Sands
**W. LOUIS SANDS, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**